**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TERRANCE FAULKNER,**

                             **Petitioner,**

      v.                                              9:08-CV-1222
                                                        (FJS)

**JOHN LEMPKE, Superintendent, Five
Points Correctional Facility,**

                             **Respondent.**
_____

**APPEARANCES**                                       **OF COUNSEL**

**TERRANCE FAULKNER
01-A-3807**
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541
Petitioner *pro se*

**OFFICE OF THE NEW YORK**          **PAUL M. TARR, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

**A.    Proceedings in state court**

    Beginning on April 17, 2001, Petitioner, *pro se* Terrance Faulkner, along with a co-defendant, James Schwinn, were tried before a jury in Albany County Court with Albany County

Court Judge Thomas A. Breslin presiding. *See, generally,* Transcript of Trial of Terrance Faulkner dated April 17, 2001 ("Trial Tr."). That trial arose out of a four-count indictment that an Albany County Grand Jury had previously returned, in which both Petitioner and Schwinn were charged with Attempted Murder in the First Degree, in violation of § 110.00 and § 125.27(l)(a)(vi) of the Penal Law of the State of New York ("Penal Law"); Conspiracy in the Second Degree, in violation of Penal Law § 105.15; and two counts of Assault in the First Degree, in violation of Penal Law §§ 120.10(1) and 120.10(3), respectively.[1]

At the conclusion of that trial, the jury found Petitioner guilty of the first three charges in the indictment, but not guilty of the First Degree Assault count which charged a violation of Penal Law § 120.10(3). *See* Trial Tr. at 787-89.

On June 26, 2001, Petitioner appeared with counsel before Judge Breslin for sentencing. At that proceeding, the court sentenced Petitioner to an indeterminate term of twenty-five years to life imprisonment on his attempted murder conviction and lesser, concurrent sentences on his remaining convictions. *See* Transcript of Sentencing of Terrance Faulkner dated June 26, 2001, at 4.

Faulkner appealed the foregoing to the New York State Supreme Court, Appellate Division, Third Department; on January 11, 2007, that court affirmed Petitioner's convictions and sentences in all respects. *See People v. Faulkner*, 36 A.D.3d 1009 (3d Dep't 2007). On April 5, 2007, New York's Court of Appeals denied Petitioner's subsequent application, seeking leave to

---

[1] The Court has gleaned this information from the County Court's instructions to the jury. *See* Trial Tr. at 713, 730, 736. Respondent did not provide this Court with a copy of the indictment, the Record on Appeal in the related criminal matter, Appellant's Appendix on Appeal, or Respondent's Appendix on Appeal.

appeal to that court. *See People v. Faulkner*, 8 N.Y.3d 945 (2007). Petitioner did not file any other challenges to his conviction other than his direct appeal. *See* Dkt. No. 1 ("Petition") at ¶ 10.

**B.     The current action**

Petitioner filed his habeas petition, pursuant to 28 U.S.C. § 2254, with the Court on November 11, 2008. *See* Petition.[2] In that pleading, Petitioner asserts that he is entitled to habeas relief because (1) the trial court's errors, including its charge to the jury on "identification," deprived him of his right to a fair trial; (2) his conviction was against the weight of the evidence; (3) he was denied his right to a speedy trial in the criminal matter below; and (4) his first degree assault conviction is a lesser included offense of the attempted murder conviction, and, therefore, the assault conviction must be dismissed. *See* Petition, Grounds One through Four.

On June 12, 2009, Respondent filed an amended memorandum of law in opposition to Petitioner's pleading, *see* Dkt. No. 13, together with certain state-court records relating to Petitioner's conviction, *see* Dkt. No. 12. In opposing Petitioner's petition, Respondent argues that Petitioner did not timely file this action. *See* Dkt. No. 12 at 20-24. Respondent additionally argues that Petitioner is procedurally barred from asserting several of the grounds he has raised in his petition and that all of his claims lack merit. *See id.* at 24-45.

---

[2] Petitioner signed his pleading on November 11, 2008. *See* Petition at 17. The Second Circuit has held that, due to the unique difficulties that incarcerated *pro se* litigants face, a prisoner's pleading is deemed to be filed at the time that he hands the papers to the prison authorities for transmittal to the court. *See Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994); *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) (extending "prison mailbox rule" to petitions seeking writ of habeas corpus pursuant to 28 U.S.C. § 2254); *see also Walker v. Jastremski*, 430 F.3d 560, 562 n.1 (2d Cir. 2005) (citation omitted).

## II. DISCUSSION

**A.     Statute of limitations generally**

Congress' enactment in 1996 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 S. Stat. 1214 (1996), brought about significant changes to the prisoner litigation landscape. One of those changes was the institution of a one-year statute of limitations applicable to habeas petitions filed after April 24, 1996. 28 U.S.C. § 2244(d). The law now provides, among other things, that

> [a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . .

28 U.S.C. § 2244(d)(1)(A).

A judgment of conviction becomes "final" for AEDPA purposes at the conclusion of the ninety-day period during which the petitioner could have sought *certiorari* review by the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001); *see also Hughes v. Irvin,* 967 F. Supp. 775, 778 (E.D.N.Y. 1997) (citing Rule 13 of the Rules of Supreme Court of the United States); *Allen v. Hardy*, 478 U.S. 255, 258 n.1 (1986) (decision becomes final where "'the availability of the appeal [is] exhausted, and the time for [filing a petition] for *certiorari* ha[s] elapsed'" (quotation omitted)); *Soto v. Portuondo*, No. 02-CV-28, 2004 WL 2501773, *3 n.4 (E.D.N.Y. Nov. 5, 2004) (citing *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)) (other citation omitted).

**B.     Applicability of AEDPA's limitations period to this case**

Applying the above-referenced statute of limitations to the facts herein, the Court notes that Petitioner's conviction became final for AEDPA purposes ninety days after April 5, 2007, the date on which New York's Court of Appeals denied Petitioner's leave application. Therefore, under the AEDPA, he was required to file this action no later than July 5, 2008, for this matter to have been timely commenced. As noted above, however, Petitioner did not sign his pleading until November 11, 2008. *See* Petition at 17. Therefore, Petitioner filed this action one hundred twenty-eight (128) days after the relevant limitations period had expired; and his petition is subject to dismissal as untimely filed unless he has established a basis for this Court to excuse the patently late filing of this action. *See* 28 U.S.C. § 2244(d); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Salerno v. People of New York State*, No. 9:98-CV-1187, 2002 WL 31741253 *3 (N.D.N.Y. Dec. 5, 2002) (collecting cases), *adopted*, *Salerno v. People of New York State*, No. 9:98-CV-1187, Dkt. No. 20 (N.D.N.Y. Mar. 25, 2003).

The Second Circuit has suggested that a district court may consider a habeas petition that would otherwise be subject to dismissal in light of the AEDPA's statute of limitations where the court determines that the limitations period should be equitably tolled. *See Smith*, 208 F.3d at 17-18. Additionally, although the Second Circuit has acknowledged that the "question remains open" as to "whether the [United States] Constitution requires an 'actual innocence' exception to [the] AEDPA's statute of limitations," *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003) (quotation omitted), the Second Circuit has nonetheless directed district courts to consider a claim of actual innocence before dismissing a habeas petition as untimely filed. *see id.*; *see also Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (citing *Whitley v. Senkowski*, 317 F.3d 223, 225-26 (2d

Cir. 2003)); *Castillo v. Ercole*, No. 07 Civ. 11256, 2009 WL 1492182, *5 (S.D.N.Y. May 27, 2009) (quotation omitted); *Austin v. Duncan*, No. 02-CV-0732, 2005 WL 2030742, *4 (W.D.N.Y. Aug. 23, 2005) (citations omitted).

### *1. Equitable Tolling*

"[I]n 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period" that the AEDPA has imposed. *Menefee*, 391 F.3d at 159 (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)); *see also Ford v. Brunelle*, No. 98-CV-778S, 2005 WL 3115868, *2 (W.D.N.Y. Nov. 22, 2005) (citation omitted). A federal district court may only properly toll the AEDPA's statute of limitations on this basis where the litigant pursued his rights diligently, but "extraordinary circumstances" prevented him from timely filing his petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted); *see also Menefee*, 391 F.3d at 154; *Cardona v. Andrews*, No. 04 Civ. 6534, 2005 WL 2649026, *3 (S.D.N.Y. Oct. 14, 2005) (citation omitted); *Marengo v. Conway*, 342 F. Supp. 2d 222, 230 (S.D.N.Y. 2004) (quotation omitted). "To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances '***beyond his control***' prevented successful filing during that time." *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001) (quotation and other citation omitted) (emphasis added); *see also West v. Hamill*, No. 04-CV-2393, 2005 WL 1861735, *1 (E.D.N.Y. Aug. 1, 2005) (citation omitted); *Li v. Artuz*, No. 01 CIV 4530, 2002 WL 48323, *2 (S.D.N.Y. Jan. 11, 2002) (citing *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001)).

In an apparent effort to establish that he is entitled to equitable tolling of the governing limitations period, Petitioner claims that he "was held in the Albany County Jail without access to [his] legal papers needed to file [the petition] in a timely manner." *See* Petition at 16. He asserts that he was "held there for 14 months" and appears to claim that, because of that delay, he was unable to commence this action in a timely manner. *See id.*

In opposing Petitioner's petition, Respondent has provided the Court with a copy of a Legal Paper Preference Form that Petitioner executed on August 13, 2007, at the Five Points Correctional Facility, the prison in which he was then incarcerated. *See* Dkt. No. 7-7 at 3 ("Preference Form"). That document noted that, during the pendency of a court action involving Petitioner, he would be temporarily housed at the Albany County Jail. *See id.*; *see also* Affidavit of Paul M. Tarr sworn to June 12, 2009, at ¶ 3. On that form, Petitioner was afforded the option of either taking his legal papers with him or leaving those papers in storage during the period of time that he would be away from the facility. *See* Preference Form. On that document, Petitioner marked with an "X" the section that indicated that he did ***not*** want to take his legal papers with him, and he also signed that document below the following text: "By designating my preference above, I will not be allowed to access my legal work once my property has been packed for storage until I return to the facility." *See id.*

In discussing the concept of equitable tolling in the context of the AEDPA's limitations period, courts have observed that, "[e]ven where exceptional circumstances are shown to exist, a habeas petitioner still bears the burden of proving that those circumstances, and not his own actions, actually prevented him from filing the petition in a timely manner." *Mason v. Pool*, 554 F. Supp. 2d 391, 397 (W.D.N.Y. 2008) (citing *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)

(citing *Smith*, 208 F.3d at 17)). In this case, Petitioner was given the choice of either keeping his legal materials with him at the Albany County Jail or having those materials "packed for storage" until such time as he returned to the Five Points Correctional Facility. *See* Preference Form. Petitioner voluntarily chose to leave his legal materials behind. Thus, far from being an "extraordinary circumstance[] beyond his control," *Nelson v. Herron*, No. 09-CV-4652, 2009 WL 4110299, *2 (E.D.N.Y. Nov. 25, 2009), it is patent that the reason Petitioner now cites as the cause of his untimely filing – lack of access to his legal materials, *see* Petition at 16 – was plainly attributable to the actions of Petitioner, who voluntarily chose to have his legal materials packed in storage, rather than have access to them, while he was housed at the Albany County Jail. Since Petitioner has not established that exceptional circumstances prevented him from timely filing his petition – much less exceptional circumstances that were beyond his control – this Court finds no basis to invoke equitable tolling in order to salvage Petitioner's untimely petition.

### 2. Actual innocence

Considering next whether Petitioner has asserted a credible claim of his actual innocence concerning the convictions noted above, the Court notes that the Second Circuit has opined that, to establish actual innocence in this context, a petitioner must present "'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Whitley*, 317 F.3d at 225 (quotation omitted); *see also Medina v. McGinnis*, No. 04 Civ. 2515, 2004 WL 2088578, *27 (S.D.N.Y. Sept. 20, 2004) (petitioner alleging that he is actually innocent must present evidence that "would certainly have created a reasonable doubt as to his guilt" (citation omitted)).

In support of his claim challenging the weight of the evidence adduced at trial, Petitioner asserts that the Court should set aside his convictions because "no one identified defendant as shooter just a family name (Cancer)." *See* Petition, Ground Two.[3]  However, this claim appears to overlook the fact that the Appellate Division, in rejecting Petitioner's challenge to the weight of the evidence in the context of Petitioner's direct appeal, summarized the evidence of Petitioner's guilt adduced at trial as follows:

> The victim identified defendant as the shooter, as well as having identified the perpetrator at the time of the incident as a member of the Cancer family.  Witnesses testified about conversations between defendant and his codefendant regarding the codefendant's desire to get back at the victim for stealing drugs from him, as well as defendant's statements that he could take care of his codefendant's problem if the price was right.  Prior to the incident, defendant was seen at the bar where the shooting occurred, had borrowed his girlfriend's car to travel to the bar and lost the car keys.  He had to return at daylight to retrieve the car from a nearby parking lot, and police found the girlfriend's car keys at the scene.  The shooter was identified by onlookers as a black man in a sweatshirt.  Defendant, a black male, was seen by police soon after the shooting walking near the scene wearing a T-shirt, but he retrieved a gun wrapped in his sweatshirt from nearby bushes when he went to pick up the car.  That morning, defendant told his girlfriend that he needed to pick up the money that his codefendant was paying him, he collected some money and stated, "[n]ice doing business with you" to his codefendant.

*Faulkner*, 36 A.D.3d at 1010-11.

In conjunction with this action, Petitioner has not provided this Court with any evidence upon which it could properly find that, had such evidence been before the petit jury that convicted him, it is more likely than not that no reasonable juror would have found him guilty of the crimes

---

[3] Other than his ground for relief challenging the weight of the evidence, Petitioner has not filed anything in this action that addresses the issue of whether he is actually innocent of the charges of which he was convicted.

of which he was convicted. Since Petitioner has failed to make a credible claim of actual innocence in this action, he cannot now seek safe harbor from the dismissal of his petition based upon this final (potential) exception to the AEDPA's statute of limitations. *E.g.*, *Menefee*, 391 F.3d at 161; *Whitley*, 317 F.3d at 225; *Medina*, 2004 WL 2088578, at *27.

### C.  Certificate of appealability

The Court notes that 28 U.S.C. § 2253 provides, in pertinent part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . ." 28 U.S.C. § 2253(c)(1)(A).[4]  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Since Petitioner has failed to make such a showing, the Court declines to issue a Certificate of Appealability in this matter.

### III. CONCLUSION

Petitioner filed his petition seeking this Court's habeas intervention some one hundred twenty-eight (128) days beyond the expiration of the one-year period of time during which Petitioner could have timely commenced this action. Moreover, the facts of this case do not demonstrate that Petitioner is entitled to an equitable tolling of the applicable statute of limitations.

---

[4] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b).

Furthermore, Petitioner has not established his actual innocence of the convictions challenged herein. Therefore, after carefully reviewing the chronology of events outlined more fully above, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Petitioner's habeas petition is here **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that a Certificate of Appealability shall **not** be issued in this case; and the Court further

**ORDERS** that the state-court records not filed herein shall be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order that any party files); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 15, 2010
      Syracuse, New York

                              Frederick J. Scullin, Jr.
                              Senior United States District Court Judge